74 F.3d 1242
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Martha SIMMONS, Plaintiff-Appellant,
v.
ILLINOIS DEPARTMENT OF MENTAL HEALTH AND DEVELOPMENTAL
DISABILITIES, Defendant-Appellee.
 No. 95-1547.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 5, 1995.
Decided Jan. 18, 1996.
 
 Before WOOD, Jr., COFFEY and MANION, Circuit Judges.
 
 ORDER
 I. BACKGROUND
 
 1
 On March 30, 1992, plaintiff-appellant Martha Simmons filed a charge of discrimination ("Charge I") with the Equal Employment Opportunity Commission (EEOC) alleging sexual harassment by her employer, the Illinois Department of Mental Health and Developmental Disabilities (IDMHDD). On June 9, 1993, Simmons filed a second charge ("Charge II") alleging retaliation for her filing of the earlier charge, and also alleging discrimination on the basis of a physical disability.
 
 
 2
 On September 23, 1993, Simmons requested a "right to sue" letter from the EEOC. The EEOC transmitted this request to the Department of Justice, which granted it. A letter regarding Charge I was sent by certified mail to Simmons at her most recent address, a post office box in Westmont, Illinois.[1] A notice was placed in that box on October 22, 1993 informing Simmons that she had received a certified letter. A second notice was placed in the same box on October 27th. By November 7, 1993, the letter was still unclaimed, and the post office returned it to the Department of Justice on that date.
 
 
 3
 Shortly thereafter, on November 17, 1993, the Justice Department issued to Simmons a right to sue letter for Charge II, and mailed it to the same post office box address. This letter was retrieved by Simmons on approximately November 27, 1993. On or near the same date, Simmons received a notice from the Justice Department through the regular mail advising her that the letter regarding Charge I had been returned unclaimed, and that she could have this letter reissued. Though it is unclear exactly when she did so, Simmons took the necessary steps to have the letter regarding Charge I reissued, and the Department of Justice did so approximately six weeks later, on January 4, 1994.[2] This letter was sent, per Simmons' request, to her residence in Palos Hills, Illinois, where she retrieved it on January 22, 1994. Simmons continues to use the post office box address in Westmont, and claims that throughout these events she has checked the box "periodically," though not "regularly" at any certain interval.
 
 
 4
 Simmons filed her complaint on March 4, 1994. The complaint incorporated both charges; Charge I, alleging sex discrimination, was incorporated in Count I, and Charge II, alleging retaliation and disability discrimination, was incorporated in Counts II and III. In response, IDMHDD filed both a Rule 12(b)(1) motion to dismiss the complaint for lack of subject matter jurisdiction and a motion for summary judgment. The motion to dismiss argued that Simmons' claims were barred by the applicable statute of limitations because of her failure to file suit within 90 days of receiving the Charge I and Charge II letters.
 
 
 5
 The district court considered IDMHDD's motion to dismiss as a motion for summary judgment since timely filing a Title VII action is not a jurisdictional prerequisite. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982). The court noted that Simmons conceded that Count III should be dismissed because her suit as to Charge II was not timely; Simmons received the right to sue letter for this count on November 27, 1993, but did not bring suit until March 4, 1994. Count III was thus dismissed. Even though Count II was based on the same charge, Simmons urged that this be considered with Count I. Without deciding this issue, the court employed a fault analysis and found that the delay in obtaining the Charge I letter was due to Simmons' inaction. Under this analysis, the 90-day clock began to run when the plaintiff could have picked up the letter, in this case October 22, 1993. Since the claim was filed far beyond the 90-day window from that date, the remaining counts were also dismissed. This appeal followed.
 
 II. ANALYSIS
 
 6
 The district court treated IDMHDD's Rule 12(b)(1) motion to dismiss as a motion for summary judgment, as allowed for Rule 12(b)(6) motions. Fed.R.Civ.P. 12(b). Neither party challenges this approach on appeal. Whether one considers the district court's ruling as one for dismissal or summary judgment, our review is de novo, granting all reasonable inferences in favor of the plaintiff (dismissal) or nonmoving party (summary judgment). City Nat'l Bank of Fla. v. Checkers, Simon & Rosner, 32 F.3d 277, 281 (7th Cir.1994) (motion to dismiss); Courtney v. Biosound, Inc., 42 F.3d 414, 418 (7th Cir.1994) (summary judgment).
 
 
 7
 Title VII requires an aggrieved party to file a charge of discrimination with the EEOC before going to court. 42 U.S.C. Sec. 2000e-5(e)(1). If the EEOC dismisses the charge, it informs the claimant by certified mail that a civil action may be brought against the employer within 90 days of receipt of the letter. 42 U.S.C. Sec. 2000e-(f)(1). Like a statute of limitations, compliance with the 90-day time limit is not a jurisdictional prerequisite, but rather a "condition precedent" to filing suit, and is subject to equitable modification. Perkins v. Silverstein, 939 F.2d 463, 470 (7th Cir.1991).
 
 
 8
 The issues in this case are when the 90-day limit began to run, and whether any equitable tolling of that limit is warranted. For the analysis of such questions, this circuit has developed a three-pronged approach. Bond v. Am.Med.Ass'n, 764 F.Supp. 122, 124 (N.D.Ill.1991) (citing Trinkle v. Bell Litho, Inc., 627 F.Supp. 764, 765 (N.D.Ill.1986)). First, in cases where the right to sue letter is mailed to the plaintiff's residence but received by someone other than the plaintiff, the 90-day period commences on the date the claimant "actually receives" the letter. Archie v. Chicago Truck Drivers, Helpers and Warehouse Workers Union, 585 F.2d 210, 216 (7th Cir.1978). Second, in cases where the right to sue letter is sent to plaintiff's attorney, the 90-day period begins to run when the attorney actually receives the notice. Jones v. Madison Service Corp., 744 F.2d 1309, 1312 (7th Cir.1984). Finally, in cases where the plaintiff does not receive a right to sue letter for some other reason, a "fault" approach is used. This approach essentially asks whether the delay in bringing suit was the "fault" of the claimant, and is determined on a case by case basis. Jones, 744 F.2d at 1313.
 
 
 9
 As Simmons concedes, the first two prongs of this approach are inapplicable here. Simmons disagrees, however, with the district court's analysis under the third prong. Simmons claims that the district court wrongly applied the "fault" approach literally, and limited its review to a narrow set of circumstances which ignored her later efforts to file her case. We find no merit in these arguments. We have held that a plaintiff must take reasonable steps to ensure delivery of a right to sue letter, St. Louis v. Alverno College, 744 F.2d 1314, 1317 (7th Cir.1984), and implied that this might include steps to ensure receipt of that letter. Id. We have also explained that a plaintiff should not be penalized "because of fortuitous circumstances or events beyond his or her control," id., at 1316, or because of delays occurring "through no fault of [his or her] own." Id. at 1317. These standards can be read as literal "fault" standards, if appropriate in context; it is conceivable that a plaintiff's "fault" may even override factors involved in the first two prongs of the analysis discussed above. See Trinkle, 627 F.Supp. at 765 n. 1 (citing Espinoza v. Missouri Pacific Railroad Co., 754 F.2d 1247, 1250 n. 3 (5th Cir.1985)).
 
 
 10
 In this case Simmons admits she failed to provide the EEOC with an address to which the first letter should have been mailed. Though the record is not conclusive on the point, the EEOC apparently discovered the appropriate post office box address from her request for the second letter. "The law presumes delivery of a properly addressed piece of mail," McPartlin v. Commissioner, 653 F.2d 1185, 1191 (7th Cir.1981), and Simmons does not deny that the letter was properly sent to this address and returned unclaimed by the Postal Service. Neither does she deny that the appropriate notices regarding the waiting letter were placed in her box. Yet Simmons failed to check the box or respond to these notices over at least a 16-day period. The district judge found this interval unreasonable under the circumstances, and we do not disagree. Such a delay, especially in the absence of any other mitigating factor, is simply not a "fortuitous circumstance" or an event beyond the control of the plaintiff. Absent these exceptions, Simmons' inaction constitutes fault.
 
 
 11
 Simmons did exercise more reasonable diligence after being notified that the letter could be reissued, and the EEOC may be rightly criticized for not clearly indicating on this notification or its replacement letter that a reissuance does not necessarily affect the time remaining for legal action. Nevertheless, these subsequent actions do not create an exception to the rule that under the fault prong of the analysis, the 90-day limit begins to run on the date the initial right to sue letter was delivered to the most recent address provided by the plaintiff. St. Louis, 744 F.2d at 1317. Even assuming a date most favorable to the plaintiff, November 7, 1993 (the day on which the letter was finally returned), Simmons' March 4, 1994 filing is clearly outside the 90-day limitations period.
 
 
 12
 Simmons next claims that the limitations period should be extended by the amount of time required to have the right to sue letter reissued and delivered to her. The 90-day period of limitations in Title VII cases may be equitably tolled when circumstances warrant. Jones, 744 F.2d at 1314 (citing Zipes, 455 U.S. at 398). A liberal application of this doctrine is disfavored, however; it has also been reserved "only for situations in which the claimant has made a good faith error (e.g., brought suit in the wrong court) or has been prevented in some extraordinary way from filing his complaint in time." Jones, 744 F.2d at 1314 (citing Smith v. American President Lines, Ltd., 571 F.2d 102, 109 (2d Cir.1978)).
 
 
 13
 Simmons was informed on November 27, 1993 that the Department of Justice had issued a right to sue letter for Charge I on October 20, 1993, and that this letter had been returned unclaimed. Even so, she delayed requesting a reissuance of the letter for nearly 30 additional days. Even after the letter was reissued by certified mail on January 4, 1994, Simmons again delayed claiming it until January 22, 1994. No explanation is provided for these delays. Under these circumstances, we find no good faith error or extraordinary circumstances warranting equitable tolling in this case.
 
 
 14
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The District Court found that this letter had been sent to the plaintiff "at a post office box that she had provided as her address." This address was evidently taken not from her first charge, which contained a different address, but from the second, more recent charge. There is some disagreement as to the contents of the other possible source for the address, Simmons' request for the first right to sue letter. This document, however, is not contained in the record. In any event neither party directly challenges the district court's finding as it relates to issues on appeal
 
 
 [2]
 The "reissued" document, apparently a mechanically-produced "form" letter, was identical to the original, unclaimed version, but bore the date January 4, 1994, not October 20, 1993. A recipient of such a letter understandably could be confused as to when the 90-day period begins to run, especially since the letter also mentions that the period begins upon the claimant's "receipt" of the letter. Under the "fault" analysis applicable here, however, this is not the case (see discussion above), and in any event the EEOC possesses no power to grant a tolling of the 90-day period. The EEOC should be faulted for such notification practices; they are misleading and may cause claimants to forfeit their right to sue